******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

NATALIE BRAY *v.* DWAYNE BRAY, SR.
(AC 43309)

Moll, Cradle and Pellegrino, Js.

*Syllabus*

The defendant, whose marriage to the plaintiff previously had been dis-
solved, appealed to this court challenging an order issued by the trial
court in connection with its denial of the plaintiff's postjudgment motion
for contempt. Under the parties' separation agreement, which was incor-
porated into the judgment of dissolution, the defendant was required
to pay to the plaintiff, as child support, alimony, and/or property distribu-
tion, certain percentages of the net income that he received from his
employer in the form of cash bonuses and stock awards. In 2015, the
plaintiff filed a postjudgment motion for contempt, claiming that the
defendant had failed to pay certain amounts required under the separa-
tion agreement. The trial court issued an order in connection therewith,
requiring that the annual amounts paid with respect to the defendant's
bonus and stock funds be based on his effective tax rate from the prior
year. The plaintiff filed another motion for contempt alleging, inter alia,
that the defendant violated the dissolution judgment by deducting extra
amounts from his bonus and stock payments for taxes that he did not
actually pay. The defendant asserted that these amounts were properly
deducted because his net proceeds were to be calculated using his
marginal tax rate rather than his effective tax rate. After a four day
hearing, during which neither of the parties ever mentioned the 2015
order, the trial court found that the defendant's noncompliance was not
wilful, but it issued a remedial order that required that he reimburse
the plaintiff for certain funds based on its conclusion that the term
"net," as used in the separation agreement, clearly and unambiguously
did not contemplate the consideration of his net income to calculate the
amount of his bonus and stock income that was subject to distribution
to the plaintiff, and the defendant appealed to this court. *Held* that the
trial court's analysis underlying its conclusion that the meaning of the
term "net," as used in the separation agreement, was clear and unambigu-
ous was erroneous because it failed to take into consideration the stipula-
tion of the parties set forth in the 2015 order, which provided specific
directions as to how the net amounts of the defendant's bonus and
stock income were to be calculated; accordingly, the remedial order
was vacated.

Argued March 8—officially released July 20, 2021

*Procedural History*

Action for the dissolution of a marriage, and for other
relief, brought to the Superior Court in the judicial dis-
trict of Hartford, where the court, *Ficeto, J.*, rendered
judgment dissolving the marriage and granting certain
other relief in accordance with the parties' separation
agreement; thereafter, the court, *Bozzuto, J.*, granted
the plaintiff's motion for contempt; subsequently, the
court, *Johnson, J.*, granted the plaintiff's motion for
contempt; thereafter, the court, *Nguyen-O'Dowd, J.*,
denied the plaintiff's motion for contempt and entered
a remedial order, and the defendant appealed to this
court. *Order vacated.*

*Adam J. Teller*, for the appellant (defendant).

*Christopher P. Kriesen*, with whom were *Qing Wai
Wong* and *Emily Covey*, certified legal interns, for the
appellee (plaintiff).

*Opinion*

PER CURIAM. This appeal arises from a postjudgment motion for contempt filed by the plaintiff, Natalie Bray, alleging that the defendant, Dwayne Bray, Sr., wilfully failed to comply with certain provisions of the parties' separation agreement, which had been incorporated into their judgment of dissolution. The provisions at issue required the defendant to pay to the plaintiff, as child support, alimony and/or property distribution, certain portions of income that he received from his employer in the form of cash bonuses and stock awards (bonus and stock income). Although the court found that the defendant had not complied with those provisions of the separation agreement, it concluded that his noncompliance was not wilful, and, therefore, it denied the plaintiff's motion for contempt.[1] On appeal, the defendant challenges the court's remedial order that required him to reimburse the plaintiff for certain funds based on the court's conclusion that the term "net," as used in the applicable provisions of the separation agreement, clearly and unambiguously did not contemplate the consideration of his net income in order to calculate the amount of his bonus and stock income that was subject to distribution to the plaintiff. The defendant specifically claims that the trial court (1) incorrectly determined that the term "net" was clear and unambiguous as used in the parties' separation agreement, and (2) erred in interpreting the term "net" to exclude from those income sources "only the amounts withheld by his employer, disregarding the defendant's actual income tax obligations, despite clear evidence that the parties intended to consider his actual marginal tax obligations and not merely the employer's withholding for those obligations." We conclude that the analysis underlying the trial court's conclusion that the term "net" was clear and unambiguous was erroneous in that it failed to take into consideration a stipulation of the parties, which was entered as an order of the court, between the date of dissolution and the hearing on the motion for contempt. That stipulation specifically directed how the "net" amounts of the defendant's bonus and stock income were to be calculated. Accordingly, we vacate the remedial order.

The following procedural history and undisputed facts are relevant to our resolution of the issues on appeal. The parties' marriage was dissolved on October 10, 2014. They executed a separation agreement on that date, which was incorporated into the judgment of dissolution. The separation agreement provided, inter alia, that the defendant would pay to the plaintiff alimony, various portions of marital assets and child support for their minor child. Specifically, as to alimony, § 4.1 of the parties' separation agreement provided that the defendant would pay to the plaintiff periodic alimony in the amount of $1000 per week for fifteen years,

plus "15 [percent] of any and all net cash bonus(es) received by the [defendant]." Section 4.5 of the separation agreement provided in relevant part: "So long as there is an alimony obligation payable to the [plaintiff], as additional alimony, the [plaintiff] shall be entitled to 15 [percent] of any and all such future stock earned from Disney[2] once liquidated as cash by the [defendant]. The 15 [percent] shall be payable from the liquidated net amount." (Footnote added.)

As to the marital assets, specifically, as to restricted stock units that had been awarded to the defendant, but had not vested, as of the date of dissolution, § 5.1 of the separation agreement provided, inter alia, that "the [plaintiff] shall be entitled to 50 [percent] of the net value of the stock upon vesting, after provision for payment of all associated taxes and fees . . . ."

As to child support, the separation agreement required the defendant to pay periodic support in accordance with the child support guidelines. Section 11.2 of the separation agreement provided that, as additional child support, "the [defendant] shall pay 15 [percent] of his net yearly bonus (non-stock bonus(es)), to the [plaintiff] so long as child support is due and owing . . . ."

On January 5, 2015, the defendant informed the plaintiff that he believed that the "net" of his cash bonus and stock income should be calculated by employing a federal tax rate of 33 percent, which was his marginal tax rate, instead of the 25 percent that his employer withheld. Accordingly, he told the plaintiff that he would subtract an additional 8 percent from the amount that he received from his employer before calculating the plaintiff's percentage of each distribution.

On May 7, 2015, the plaintiff filed a motion for contempt, alleging, inter alia, that the defendant had not complied with the periodic child support or alimony orders, or the provisions of the separation agreement that required him to pay to her a certain portion of his bonus and stock income.[3] As a result of that motion, on November 2, 2015, the trial court, *Johnson, J.,* issued an order that provided, inter alia: "The parties stipulate to the following . . . [t]he parties shall each receive their bonus and stock funds based upon the [defendant's] ***effective tax rate*** from the previous year and not his marginal tax rate. At the end of each tax year, the parties shall reconcile within thirty (30) days of the [defendant] filing his tax returns. The reconciliation shall be done to determine if the [defendant] over withheld or under withheld. The parties shall adjust their earnings based on this determination by the parties' accountants. The difference after reconciliation, if any, shall be paid within thirty (30) days of reconciliation to the party who is owed money." (Emphasis in original.)

On March 28, 2018, the plaintiff filed another motion

for contempt, alleging, inter alia, that the defendant violated the dissolution judgment by deducting "extra money from bonuses and stock payments for 'extra taxes'" that he does not actually pay. The plaintiff argued that the "net" proceeds from the defendant's bonus and stock income were to be calculated by subtracting the actual taxes paid by the defendant, which she referred to as the defendant's "effective tax rate." The defendant maintained his position that his marginal tax rate of 33 percent should be applied to calculate the net proceeds.

Following a four day hearing beginning on September 5, 2018, and concluding on May 9, 2019, the trial court filed a memorandum of decision on August 2, 2019. In its memorandum of decision, the court stated, inter alia:[4] "The parties provided the court with extensive testimony and argument to support their position that the parties' [separation] agreement, specifically [§§] 4.1, 4.5, 5.1 and 11.2, requires the court to define the term 'net income' before it can determine how . . . additional alimony and child support payments are to be calculated. Specifically, the defendant argues that the term 'net income' as contemplated by the parties in the [separation] agreement is defined as his marginal tax rate. The plaintiff argues the opposite, claiming that 'net income' is defined as his effective tax rate." The trial court concluded that it did "not need to resolve the issue presented by the parties as to the definition of 'net income' pursuant to the parties' [separation] agreement" because "neither party has established a plausible argument for their position that the parties' [separation] agreement for the defendant to make additional alimony and child support payments is linked to his net income and how the term 'net income' is defined. To the contrary, each of the provisions in the [separation] agreement that are the subject of the plaintiff's motion for contempt are clear and unambiguous and nothing within the parties' [separation] agreement requires a definition of the defendant's net income in order to enforce the provisions." The court addressed each of the specific provisions of the separation agreement and explained: "In each of the sections that is the subject of the plaintiff's motion for contempt, the term 'net' has been attached to the specific type of additional compensation received by the defendant—cash bonuses, stocks or distribution from [restricted stock units]." The court further reasoned: "[I]n reviewing the [separation] agreement as a whole, there is no language to suggest that the defendant's net income has any effect on his obligation to make additional alimony and child support payments. Nothing within the [separation] agreement requires the parties to reconcile payments related to cash bonuses and stock distributions after the defendant files his tax returns. Presumably, this (nonexistent) condition would allow the parties to conduct a forensic accounting and determine the defen-

dant's tax rate for that particular year. There is also no language in the [separation] agreement that ties the exchange of the end-of-year statements for bonuses and stock distribution to the payments of additional alimony and child support. Instead, the provisions in the [separation] agreement that are at issue stand alone and are clear and unambiguous as to when and how much additional alimony and child support payments should be paid to the plaintiff by the defendant, regardless of his net income." The court found that the defendant's failure to comply with the provisions of the separation agreement by deducting additional taxes from his proceeds was based on a "legitimate misunderstanding by the defendant . . . ." On that basis, the court concluded that the defendant's failure to comply with the separation agreement was not wilful and, therefore, denied the plaintiff's motion for contempt. The court further concluded, however: "Despite this misunderstanding, the defendant is still responsible to pay the plaintiff her percentage share under the [separation] agreement without the additional 8 [percent] removed on the net amount he received from his cash bonuses, stock or distribution from [restricted stock units]. The court orders that the defendant reimburse the plaintiff the payments made pursuant to [§§] 4.1, 4.5, 5.1 and 11.2, consistent with this decision." This appeal followed.

The defendant argues that the court's remedial order requiring him to reimburse the plaintiff for the additional 8 percent that he had deducted from his bonus and stock income was based on an incorrect interpretation of the separation agreement. As noted, both parties argued to the trial court that the plaintiff's portion of the defendant's bonus and stock income was dependent on the applicable tax rate, but the trial court rejected those arguments, reasoning that, if the parties had intended "net" to be a factor of the defendant's net income, they would have provided for an exchange of tax information or annual accountings. The November 2, 2015 order did just that. The November 2, 2015 order[5] expressly provided for an annual reconciliation of the amounts due each year based on the defendant's income tax returns, as determined by their accountants.[6] Thus, the rationale underlying the court's remedial order— that the separation agreement clearly and unambiguously did not contemplate the consideration of the defendant's net income because it did not provide for an annual reconciliation of the amount owed to the plaintiff based on the defendant's tax obligations—is inconsistent with the November 2, 2015 order that directed the parties to employ that exact procedure. Accordingly, the court's remedial order cannot stand.

The August 2, 2019 remedial order is vacated.

[1] The plaintiff has not cross appealed from the denial of her motion for contempt.

[2] At all times relevant herein, the defendant was employed by ESPN, which is owned by Disney Worldwide Services, Inc.

[3] The plaintiff also had filed a motion for contempt on January 26, 2015,

alleging that the defendant had stopped paying child support and alimony, both the periodic orders and those stemming from his bonus and stock income. As a result of that motion, an order for immediate wage withholding was entered on April 7, 2015, to secure the defendant's periodic obligation. The court also issued another order, by agreement of the parties, pertaining to the parties' exchange of financial information. Of particular note, the court ordered: "Each party shall authorize their respective accountants to speak with the other *regarding applicable tax rates, 2014/2015 income, and any other information necessary to determine net proceeds* due to the [plaintiff] pursuant to the [separation] agreement dated October 10, 2014." (Emphasis added.) Like the November 2, 2015 order discussed subsequently in this opinion, this order is indicative of the parties' intent and understanding that the defendant's net income and the tax rate applied to calculate that income were relevant to the calculation of the "net" amounts contemplated in the separation agreement. Also, like the November 2, 2015 order, this order belies the court's determination that the term "net" clearly and unambiguously was not a factor of the defendant's net income.

[4] The court addressed additional issues that are not relevant to this appeal.

[5] We note that the November 2, 2015 order reflects that both parties were present in court with counsel at the time that the order was entered.

[6] Our review of the parties' respective filings and arguments before the trial court, including the transcripts of the four day contempt hearing, reveals that neither the parties nor the trial court mentioned the November 2, 2015 order. On April 15, 2021, this court issued an order directing the parties to file supplemental briefs "addressing what effect, if any, this order has on the appeal presently pending in this matter." Both parties filed supplemental briefs in accordance with the April 15, 2021 order.